IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARC NORFLEET,                          )
                                        )
              Plaintiff,                )
                                        )
vs.                                     )     Case No.   10-cv-626-JPG-SCW
                                        )
ILLINOIS DEPT. OF CORRECTIONS,          )
                                        )
              Defendant.                )

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

This matter is before the Court on Defendant Illinois Department of Corrections' ("IDOC") motion for summary judgment (Doc. 123).   Plaintiff has filed a response (Doc. 128) in opposition to the motion.   The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a).   It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **DENY** Defendant's motion for summary judgment.

### FACTUAL BACKGROUND

Plaintiff filed his amended complaint on March 3, 2011 (Doc. 10) alleging violations of his constitutional rights against numerous individuals.   In conducting its

threshold review pursuant to 28 U.S.C. § 1915A, some claims and parties were dismissed, and Plaintiff was given the opportunity to dismiss claims that the Court planned to sever as not sufficiently related to his other pending claims (Doc. 12, p. 11). Plaintiff did not seek to dismiss the claims, instead seeking leave to file an amended complaint (Doc. 19).   That motion was denied by Magistrate Judge Philip M. Frazier, the magistrate judge initially assigned to the case, because Plaintiff's proposed complaint did not follow District Judge Gilbert's designated counts as set up in the threshold order, included parties previously dismissed with prejudice, and sought to include the claims that were severed by the Court (Doc. 24).   Plaintiff filed an objection to Magistrate Judge Frazier's order as well as a motion to reconsider (Docs. 28 and 29). Judge Gilbert subsequently denied those motions (Doc. 30).   Plaintiff then filed a motion to reconsider Judge Gilbert's order which was subsequently denied (Docs. 31 and 32).

Plaintiff subsequently filed a "motion to avoid continuance of sham screening order" (Doc. 33) which Judge Gilbert construed as a motion to dismiss Plaintiff's remaining claims.   That motion was granted (Doc. 34) and judgment was entered on May 5, 2011 (Doc. 35).   Plaintiff appealed the Court's order dismissing his claims (Doc. 36).

On appeal, the Seventh Circuit determined that the dismissal of all of Plaintiff's claims, except Plaintiff's claim that he was denied physical outdoor recreational activity based on his disability, were proper.   *See Norfleet v. Walker*, **684 F.3d 688 (7th Cir.**

**2012).**   As to Plaintiff's claim initially brought under the Americans with Disabilities Act, the Seventh Circuit found that Plaintiff had stated an adequate claim that he was denied seven weeks of recreation do to a policy that prevented disabled inmates in segregation from engaging in outdoor recreation unless at least nine other disabled inmates wanted to participate (Doc. 52, p. 5; *Norfleet*, **684 F.3d at 690.**).   However, the Seventh Circuit found that Plaintiff's claim was more appropriate under the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* and remanded the case back for further proceedings.   The Illinois Department of Corrections ("IDOC") was substituted for the employee defendants as the proper defendant under the Rehabilitation Act (Doc. 53, p. 2; *Norfleet*, **684 F.3d at 690.**).   The case was later reassigned to the undersigned.

Defendant IDOC subsequently filed a motion for summary judgment arguing that Plaintiff was not denied access to the yard by reason of his disability but rather a 10 prisoner policy for access to the yard that was instituted throughout the entire segregation unit, not just to those inmates that were disabled.   The Court finds the following facts relevant for purposes of Defendant's motion.

Plaintiff argues that he was denied access to the yard for seven weeks while housed in Menard's segregation unit because of a policy that prevented individuals in his unit from going to yard unless at least ten inmates in the unit wanted to attend yard (Doc. 128, p. 3).   Plaintiff indicates in his brief that he was in a segregation housing unit, N2, "e" wing, which contained only wheelchair accommodating cells (*Id.*).   During the weeks in question, the weeks of April 14, 21, 28 and the weeks of May 5, 12, 19, and 26,

Plaintiff was denied access to regularly scheduled A.D.A. basketball because less than ten inmates in his housing unit wanted to go to yard those weeks (Doc. 128, pp. 2-3). Plaintiff indicates that on those dates, only seven individuals in his housing unit wanted to attend yard, thus under the prison's policy, none of the inmates in the housing unit were allowed to go to yard (*Id*. at p. 17).   All other non-disabled inmates who were not in the same housing unit as disabled inmates went to the yard on those dates (*Id*. at pp. 4 and 8).

Defendant IDOC has offered the testimony from Jerry Goforth in the form of an affidavit (Doc. 123-2).   Goforth was a correctional counselor in North 2 cell house, the segregation unit where Plaintiff was housed during the dates in question (Doc. 123-2 at ¶ 1-2).   Goforth acknowledged that there was a policy that when fewer than ten inmates wanted to go to the yard on yard day, no offenders were permitted access to the yard for safety and security purposes (Doc. 123-2 at ¶ 3).   According to Goforth, this was because at least four guards in the North 2 block were also required to patrol the yard; thus if a small number of inmates were allowed to go to the yard, the cellhouse would be without four guards even though the vast majority of the inmates remained in the cellhouse (*Id*. at ¶ 4).   According to Goforth's testimony, taking four guards out of the cellhouse to allow a small amount of inmates to go to the yard would have created a potentially dangerous situation in the cellhouse, given the limited number of officers remaining in the cellhouse with the majority of the inmates (*Id*.).

Goforth also testified that all North 2 cell block inmates were scheduled for yard

at the same time regardless of disabilities and the disabled prisoners were partitioned off on the yard from non-disabled inmates (Doc. 123-2 at ¶6-7). But according to Goforth, the entire cell block, including both disabled and nondisabled inmates were counted toward a single, ten-prisoner threshold requirement (*Id.* at ¶8).

LEGAL STANDARDS

### A. Summary Judgment Standard

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(a)).** *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005).** The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)).** A fact is material if it is outcome determinative under applicable law. *Anderson*, **477 U.S. at 248;** *Ballance v. City of Springfield, Ill. Police Dep't*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Vill. of Slinger*, **388 F.3d 1015, 1027 (7th Cir. 2004).** A

genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.** "A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee*, **246 F.3d 927, 931–32 (7th Cir. 2001) (citations and quotations omitted).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.; Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008).** Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004),** *abrogated on other grounds by Spiegla II*, **481 F.3d at 966 (7th Cir. 2007).** *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**

## B. Rehabilitation Act of 1973, 29 U.S.C. § 794.

Plaintiff's remaining claim rests solely on Plaintiff's claim under section § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* Section 504 of the Act prohibits recipients of federal funding from discriminating against individuals solely on the person's disability. **29 U.S.C. § 794(a).** The Seventh Circuit has found that the Rehabilitation Act and the Americans with Disabilities Act is "co-extensive" and that the

analysis is the same except that the Rehabilitation Act requires an "additional element the receipt of federal funds, which all states accept for their prisons." *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 671-72 (7th Cir. 2012) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 716 n. 4, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005); *Gratzl v. Office of Chief Judges*, 601 F.3d 674, 678 (7th Cir.2010).    Thus, to maintain a claim under the Rehabilitation Act, the plaintiff must establish that: "(1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability." *Jaros*, 684 F.3d at 672 (citing 29 U.S.C. § 705(2)(B); *Wis. Cmty. Serv. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006); *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 119 (7th Cir. 1997)).[1]

### ANALYSIS

The Seventh Circuit has already determined that Plaintiff is a qualified person with a disability as denied in the Rehabilitation Act, and that Plaintiff sought to participate in a program or activity as he sought recreation. *Norfleet*, 684 F.3d at 690. The sole issue for summary judgment is whether Plaintiff was denied access to recreation because of his disability.   The Court finds that there is a dispute of fact as to this element which prevents the Court from awarding summary judgment at this time. Defendant IDOC argues in its motion for summary judgment that Plaintiff was not denied recreation based on his disability.   Rather, the decision to allow prisoners to go to the yard was based on the fact that Plaintiff was in segregation, not on Plaintiff's

---

[1] While the Rehabilitation Act has the added factor that the program at issue receive federal financial assistance, this factor is not at issue here given that the Illinois Department of Corrections receives federal funding.   *Norfleet*, 684 F.3d at 690.

status as disabled.   Jerry Goforth, who was correctional counselor at Menard Correctional Center during the time period that Plaintiff was housed in the segregation unit, testified in his affidavit that prisoners in the segregation unit were permitted five hours in the yard per week, but the policy at Menard allowed access to the yard when at least ten offenders wanted to go to the yard (Doc. 123-2 at ¶ 3).   Goforth testified that this limitation on the yard was due to safety and security concerns as patrolling the yard required at least four officers to be taken from the cell block which would cause a security concern if the majority of the inmates chose to stay inside (*Id*. at ¶ 4).   However, Defendant IDOC has not produced a written policy supporting Goforth's assertions and Goforth was a correctional counselor, not a guard in segregation, so there is no evidence as to how that policy was applied to the segregation unit were Plaintiff's was housed.

Further, Plaintiff has offered competing evidence suggesting that the ten inmate policy applied to each housing unit and as his unit featured only wheelchair accessible cells, if less than ten disabled inmates wanted to go to the yard, none of the inmates in that disabled housing unit were allowed to go to the yard while other segregation inmates who were not disabled, and held in other housing units, were allowed access to the yard (Doc. 128, pp. 3 and 8).   Thus, the undersigned finds that there is a dispute of fact as to whether the policy applied to all prisoners in the segregation cellblock as Goforth testified or whether it applied to each housing unit, such that the disabled housing unit was not allowed access to the yard when other segregation units were allowed access.   As the undersigned finds that there is a dispute of fact as to this issue, it

is **RECOMMENDED** that the Court **DENY** the motion for summary judgment.

To the extent that Defendant also argues that Plaintiff's desired accommodation would create a security risk and that the policy was reasonable, the undersigned finds that the dispute of fact in regards to the policy prevents the award of summary judgment.   As to whether Plaintiff's desired accommodation would create a security risk, that issue also depends on how the policy applies to the individual housing units. If other non-disabled segregation inmates were allowed access to the yard requiring guards to patrol the yard, then Defendant's argument that it would create a security risk by diverting guards from the housing unit would be less persuasive as guards were already on the yard for the non-disabled inmates.   Further, the undersigned cannot determine if IDOC's policy was reasonable as there is a dispute over what that policy was and how it was applied to Plaintiff's unit.    Thus, there remain disputes of fact for trial.

### A.  Availability of Damages

Plaintiff's original complaint sought compensatory and punitive damages as well as injunctive relief.   As Plaintiff is no longer at Menard Correctional Center and is currently housed at Pinckneyville Correctional Center, the Court finds that Plaintiff's request for injunctive relief is now moot.   *Higgason v. Farley*, **83 F.3d 807, 811 (7th Cir. 1996) (transfer to another institution moots prisoner's request for injunctive relief unless he makes a showing that he will likely be transferred to that first institution).**

As to monetary damages, compensatory damages are available in private rights

of action under the Rehabilitation Act but not punitive damages.   *CTL ex rel. Trebatoski v. Ashland School Dist.*, **743 F.3d 524, 528 (7th Cir. 2014)(citing** *Barnes v. Gorman*, **536 U.S. 181, 184-85, 122 S.Ct. 2097, 153 L.Ed.2df 230 (2002)).**   However, in order to recover damages, Plaintiff must show intentional discrimination.   Section 505 of the Rehabilitation Act incorporates all remedies found in Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq., which allows for remedies against the state for violation of the statute.   **29 U.S.C. § 794a(a)(2); 42 U.S.C. §2000d-7(2)**.   The Supreme Court, in reviewing Title VI, found that compensatory damages are recoverable for a private individual for intentional discrimination only and most courts interpreting the case find, similarly, that compensatory damages under the ADA or Rehabilitation Act are only available if a plaintiff shows intentional discrimination on the entity's part.   *Phipps v. Sheriff of Cook County*, **681 F.Supp.2d 899, 917 (N.D. Ill. Nov. 25, 2009) (citing** *Guardians Assn. v. Civil Serv. Comm'n of New York City*, **463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983);** *Nieves-Marquez v. Puerto Rico*, **353 F.3d 108, 126 (1st Cir. 2003);** *Delano-Pyle v. Victoria County, Tex.*, **302 F.3d 567, 574 (5th Cir. 2002)).**   While the Seventh Circuit has not directly ruled on the issue of whether compensatory damages are available only for intentional discrimination, they have acknowledged that there is a split over the appropriate standard and note that the Third Circuit has adopted the majority standard, requiring intentional discrimination for the award of compensatory damages.   Thus, while the Seventh Circuit has not squarely addressed the issue, the undersigned **RECOMMENDS** that the Court adopt the majority standard and find that

Plaintiff must show intentional discrimination in order to obtain compensatory damages. There remain issues of fact, however, as to whether Plaintiff was intentionally discriminated against.

## CONCLUSION AND RECOMMENDATION

Accordingly, the undersigned **RECOMMENDS** that the Court **DENY** Defendant's motion for summary judgment.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g.,* *Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **May 9, 2016.**

**IT IS SO ORDERED**.
DATED:   April 20, 2016.

/s/ Stephen C. Williams
STEPHEN C. WILLIAMS
United States Magistrate Judge